IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria Torres,                              :
                    Petitioner             :
                                           :    Nos. 67, 68 & 69 C.D. 2016
          v.                               :
                                           :    Submitted: July 1, 2016
Unemployment Compensation                  :
Board of Review,                           :
                    Respondent             :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED: November 7, 2016


          Maria Torres (Claimant), proceeding *pro se*, petitions for review of the
December 8, 2015 order of the Unemployment Compensation Board of Review
(Board),[1] which affirmed a referee's decision dismissing her appeal as untimely
pursuant to section 501(e) of the Unemployment Compensation Law (Law).[2]  We
vacate and remand for additional fact-finding.

---

[1] The Board filed three separate orders, all dated December 8, 2015, dismissing Claimant's
appeals as untimely.  Hence, Claimant filed three separate appeals with this Court which we
consolidated.

[2] Section 501(e) of the Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897,
*as amended*, 43 P.S. §821(e).

The relevant facts and procedural history of this case are as follows. Claimant filed an initial application for unemployment compensation benefits effective November 16, 2008, providing a mailing address of 1354 Riverside Drive, Philadelphia, Pennsylvania, 19154.[3] As part of the application process, the local service center sent Claimant a handbook, which advises applicants that they are required to report a change of address to the local service center. Nearly one year later, Claimant established a new unemployment compensation claim effective November 15, 2009, based upon her separation from employment with RGIS Inventory Specialist (Employer). (Findings of Fact Nos. 1-3.)

After Claimant received and exhausted her unemployment benefits, she filed for and received benefits under what has been referred to as the Emergency Unemployment Compensation Act (EUC Act)[4] for the weeks ending September 18, 2010, until July 2, 2011. However, Claimant relocated to a different address sometime in 2010, and her current address is 10027 Ferndale Street, Apt #2, Philadelphia, Pennsylvania, 19116. Upon relocating to this address, Claimant updated her mailing address with the U.S. postal service, but did not provide an updated mailing address to the local service center. (Finding of Fact No. 4.)

Approximately one year and two months after Claimant stopped receiving benefits, the local service center mailed Claimant a variety of notices of

_____

[3] It is not readily apparent who Claimant's separating employer was as part of her initial application, but this fact is not relevant to our current analysis.

[4] *See* Title IV of the Supplemental Appropriations Act of 2008, Act of June 30, 2008, P.L. 110-252, *as amended,* Sections 4001-4007, 26 U.S.C. §3304 Note. In relevant part, section 4001(b) of the EUC Act states that a "[t]he State will make payments of [EUC benefits] to individuals who . . . have exhausted all rights to regular compensation under the State law or under Federal law with respect to a benefit year . . . ." 26 U.S.C. §3304 Note.

determinations on September 12, 2012, at her last known address in its records, 1354 Riverside Drive. In these determinations, the local service center concluded, *inter alia*, that Claimant was ineligible for unemployment benefits and EUC benefits and assessed fault and fraud overpayments in the total amount of $17,582.00. The final day to appeal these determinations was September 27, 2012, although two of the determinations incorrectly listed September 26, 2012, as the final day to appeal. The notices of determinations were not returned by the U.S. postal authorities as undeliverable. (Findings of Fact Nos. 8-11, 13; Record Item No. 2.)

In August 2015, Claimant discovered that her Federal Income Tax Refund for the 2015 tax year was being intercepted by the Commonwealth due to an issue with her prior claims for unemployment compensation benefits. On August 11, 2015, Claimant contacted the local service center, was advised of the appeal process, and filed an appeal via facsimile transmission on that same date. (Findings of Fact Nos. 14-16.)

The referee convened a hearing at which Claimant testified that, after she got married, she moved to her current address in 2010 and updated her mailing address with the U.S. postal service. Claimant stated that the postal service did not forward the notices of determinations to her new address. (Finding of Fact No. 7; Notes of Testimony (N.T.) at 7.)

In its decision, the referee determined that "[t]here is insufficient competent evidence in the hearing record" to permit Claimant to file an appeal *nunc pro tunc*. (Finding of Fact No. 17.) Critically, the referee explained:

> In the present case, the competent documentary evidence of record establishes [that] the [local service center] mailed the adverse Notices of Determinations . . . to Claimant's last known mailing address . . . and there is no indication in the hearing record that said Determinations were returned by

3

the postal authorities as undeliverable. Therefore, the Determinations are presumed to have been received. Claimant's appeal contained in the certified record was untimely.

While the [r]eferee notes the discrepancy regarding the appeal deadlines listed on . . . the Determinations, said issue does not impact or otherwise prevent Claimant from filing a timely appeal as Claimant's rationale for failing to file a timely appeal was due to her alleged failure to receive the Determinations or become aware of them until August 2015.

Here, Claimant contended that she relocated to her current address of record sometime in 2010 and that she updated her mailing address with the U.S. postal authorities. However, Claimant admitted that she did not update her mailing address with the [local service center] even though she continued to receive benefits until July 2011. *As such, to any extent that Claimant's presumption of receipt of the Determinations has been rebutted, it must reasonably be inferred that any failure on Claimant's part to receive the Determinations was due to Claimant's negligence in failing to update her mailing address with [the local service center] as required . . . .*

(Referee's decision at 3) (emphasis supplied). On this reasoning, the referee dismissed Claimant's appeal as untimely under section 501(e) of the Law.

Claimant appealed and the Board affirmed, adopting and incorporating the referee's factual findings and legal conclusions. Notably, neither the referee nor the Board made any credibility determinations with respect to Claimant's testimony, concluding instead that Claimant failed to present sufficient evidence as a matter of law to allow an appeal *nunc pro tunc*.

4

Before this Court,[5] Claimant argues that she moved in 2010,[6] updated her mailing address with the U.S. postal service, and never received the notices of determinations. Claimant contends that she tried to obtain a hard copy of her address change and forwarding request, but the U.S. postal service informed her that they could not retrieve these documents because they are stored for no more than two years.

In pertinent part, section 501(e) of the Law provides that an appeal from a notice of eligibility determination must be filed "within fifteen calendar days after such notice was delivered to him personally, or was mailed to his last known post office address." 43 P.S. §821(e). If an appeal is not filed within fifteen days of mailing, the determination becomes final and the Board is without jurisdiction to consider the matter. *Roman-Hutchinson v. Unemployment Compensation Board of Review*, 972 A.2d 1286, 1288 n.1 (Pa. Cmwlth. 2009).

When notice is mailed to a claimant's last known address and not returned by the postal authorities as undeliverable, the claimant is presumed to have received it and, absent extraordinary circumstances, is barred from filing an untimely appeal. *Mihelic v. Unemployment Compensation Board of Review*, 399 A.2d 825, 827 (Pa. Cmwlth. 1979). The presumption of receipt "is based on the notion that, once the notice, properly addressed, is placed in the mail, there are usually two

---

[5] Our scope of review is limited to determining whether constitutional rights have been violated, whether an error of law has been committed, and whether findings of fact are supported by substantial evidence. *Torres-Bobe v. Unemployment Compensation Board of Review*, 125 A.3d 122, 126 n.3 (Pa. Cmwlth. 2015).

[6] In her brief, Claimant states that she moved in 2012. Regardless of whether this is an accurate statement or an error, the evidence of record can only support a finding that she moved in 2010. (*See* N.T. at 7.)

5

options: either the notice will be delivered as addressed, or, if it cannot be delivered, it will be returned to the sender." *Volk v. Unemployment Compensation Board of Review*, 49 A.3d 38, 41 (Pa. Cmwlth. 2012) (en banc). "Although those two options are the most likely to occur in our experience, there are occasions in which mail is lost or not delivered for some reason." *Id.* at 41.

If certain requirements are established, a party may proceed *nunc pro tunc,* or "now for then," with an untimely appeal. *Hessou v. Unemployment Compensation Board of Review*, 942 A.2d 194, 197-98 (Pa. Cmwlth. 2008). "An appeal *nunc pro tunc* may be permitted when a delay in filing the appeal is caused by extraordinary circumstances involving fraud, administrative breakdown, or non-negligent conduct, either by a third party or by the appellant." *Mountain Home Beagle Media v. Unemployment Compensation Board of Review*, 955 A.2d 484, 487 (Pa. Cmwlth. 2008). An appellant may satisfy this burden in one of two ways: "First, [s]he can show the administrative authority engaged in fraudulent behavior or manifestly wrongful or negligent conduct. Second, [s]he can show non-negligent conduct beyond [her] control caused the delay." *Hessou*, 942 A.2d at 198.

Here, the Board, in adopting the referee's findings and conclusions, determined, at least initially, that Claimant is presumed to have received the notices of determinations because the local service center mailed the notices to Claimant at her last known address and the notices were not returned as undeliverable. However, the Board also determined (or seemingly believed) that Claimant rebutted the presumption of receipt, ostensibly based on the fact that she updated her address with the U.S. postal authorities. *See* Referee's decision at 3 ("[T]o any extent that Claimant's presumption of receipt of the Determinations has been rebutted . . . ."). Nonetheless, the Board faulted Claimant for failing to update her mailing address

6

with the local service center and deemed this to be the reason, or cause-in-fact, for her not receiving the determinations. *See id.* ("[A]ny failure on Claimant's part to receive the Determinations was due to Claimant's negligence in failing to update her mailing address with [the local service center] as required [.]").

In embodying this analysis, though, the Board apparently presumed that a *nunc pro tunc* appeal can only lie where a claimant updates her address with the local service center and there is an administrative breakdown attributable to the wrongful or negligent conduct of the unemployment compensation authorities. However, our case law is much more expansive, permitting a *nunc pro tunc* appeal in situations where a third party – not just the apparatus of the unemployment office – commits negligence and that negligence results in a claimant not receiving notice in a timely fashion.

This Court has held that if the Board properly sends notice, but there was some intervening negligence by a third party, then an appeal *nunc pro tunc* is appropriate. *Bradley v. Pennsylvania Board of Probation and Parole*, 529 A.2d 66, 67 (Pa. Cmwlth. 1987). In point of fact, "*[n]unc pro tunc* relief may be granted where there is evidence of a breakdown in the postal system." *Nationwide Insurance Company v. Pennsylvania Insurance Department*, 779 A.2d 14, 16-17 (Pa. Cmwlth. 2001) (citing *Walker v. Unemployment Compensation Board of Review*, 461 A.2d 346 (Pa. Cmwlth. 1983)).

In *Walker*, a referee denied a claimant benefits and the decision, accompanied by notice that the claimant had fifteen days to appeal to the Board, was mailed to the claimant's last known address. Notably, the regulations at the time stated, and continue to state, that notices sent "at [the parties'] known addresses as furnished by the parties to the referee, the Board, or the Department shall constitute

notice of the matters therein contained," 34 Pa. Code §101.53 (adopted August 26, 1970, effective August 27, 1970, 1 Pa.B. 435), and placed a duty on the claimant to update a change of address with the unemployment authorities, *see Gadsden v. Unemployment Compensation Board of Review*, 479 A.2d 74, 75-76 (Pa. Cmwlth. 1984).

The claimant in *Walker* filed an untimely appeal and testified before a referee that he had requested the postal service to forward his mail to another address but, because the postal service had failed to do so, the referee's decision and appeal instructions were not received until late in the appeal period. The Board determined that the claimant's appeal was facially untimely. When the case came up to this Court, we concluded that the Board erred in dismissing the claimant's appeal on the ground that the claimant failed to show that the untimely appeal was due to non-negligent circumstances. Ultimately, and despite the fact that the *claimant did not update his address with the unemployment authorities as required* by 34 Pa. Code §101.53, we vacated the Board's decision and remanded to the Board to issue factual findings regarding the claimant's allegation that he failed to file his appeal timely because the post office failed to honor his request to forward his mail. *See also Verdecchia v. Unemployment Compensation Board of Review*, 657 A.2d 1341, 1343-44 (Pa. Cmwlth. 1995) (concluding that the employer had "proper cause" for an additional hearing where the employer testified that it did not receive notice of the hearing because it requested the post office to forward its mail and "the post office held some of the mail for as long as six weeks before delivering it.").

Significantly, here, the Board did not make any specific credibility determination or finding of fact with respect to Claimant's testimony that she updated her mailing address with the U.S. postal service, but the postal service did not

8

forward the notices of determinations. Under *Walker*, and also as recognized by our Supreme Court, this testimony, if credited, could warrant a *nunc pro tunc* appeal. *See Criss v. Wise*, 781 A.2d 1156, 1160 (Pa. 2001) (citing *Walker* favorably for the proposition that the "U.S. Postal Service's failure to forward notice of referee's decision to appellant's address, as appellant had requested, warranted appeal *nunc pro tunc*."); *see also J.A. v. Department of Public Welfare*, 873 A.2d 782, 786 (Pa. Cmwlth. 2005) (stating that, if accepted as true, an appellant's allegation that she was living in a homeless shelter at the time the notice was mailed, and that the shelter's staff failed to provide her with the notice, "might be sufficient to permit a *nunc pro tunc* appeal.").

This case is materially indistinguishable from *Walker* and the need to consistently apply our precedent is compelling, especially in a situation where Claimant is being back assessed for over $17,000.00. Importantly, without an assessment of the substance of Claimant's testimony or credibility, the Board found that Claimant failed to present sufficient evidence as a matter of law to warrant *nunc pro tunc* relief. If failure to update an address with the unemployment authorities was a *per se* fatal fact that commands denial of *nunc pro tunc* relief, as the Board suggests, then this Court in *Walker* would not have remanded for additional fact-finding concerning the U.S. postal service's failure to forward mail. Indeed, if the Board were to find that the U.S. postal service failed to forward Claimant's mail, this fact would be the actual and superseding cause for the delay in filing the appeals, and Claimant's failure to update her address with the unemployment authorities would, in essence, be irrelevant.[7] This conclusion is compelled by our holding in *Walker*.

---

[7] Although the post office typically forwards mail for a period not to exceed eighteen months, *see id.* at 507.2.1.1—507.2.1.3, if Claimant's request for forwarding had expired at the time **(Footnote continued on next page…)**

9

Moreover, the peculiar circumstances of this case are factually significant, where: the notices of determinations were not sent to Claimant until a year and two months (approximately) after she stopped receiving benefits and her relationship with the unemployment office apparently ceased; the hard copy of Claimant's change of address form would no longer be on file with the U.S. post office at the time of the hearing; and the notices were not returned as undeliverable to the local service center with an "unable to forward" endorsement. *See* Section 507.2.1.1 of the Mailing Standards of the United States Postal Service, *Domestic Mail Manual* (2016) ("Records of permanent change-of-address orders are kept by city delivery Post Offices for 18 months[.]"); *see id.* at Section 507.1.4.1 (stating that nonmailable pieces are returned to the sender with an endorsement stating "Not Deliverable as Addressed—Unable to Forward" in situations where the "[m]ail is undeliverable at [the] address given; [there is] no change-of-address order on file; [or the] forwarding order [has] expired.").

In other words, if Claimant gave notice of change of address to the U.S. post office, the notices would be forwarded by the U.S. post office to that address, returned to the sender (the local service center) for no known address, or "lost" in the mail. But, here, the record is lacking of any discussion of this issue by the Board. Compounding matters, in the reasoning section of the referee's decision, which was

---

**(continued…)**

the local service center sent the notices, the notices would have been returned as undeliverable with an endorsement stating that Claimant's forwarding order had expired. Because the notices were not returned to the local service center as undeliverable, it could reasonably be inferred that Claimant's forwarding request remained in effect when the notices were sent. However, it is up to the Board, as fact-finder, to resolve these factual issues and determine whether Claimant received the notices (that is, failed to rebut the presumption of receipt) or if the notices were lost somewhere along the way as the result of mishandling by the postal authorities.

adopted by the Board, the referee did not make any clear pronouncement as to whether Claimant actually rebutted the evidentiary presumption of receipt. And the Board did not render any specific credibility determination or finding of fact regarding whether Claimant did, as a matter of fact, rebut the presumption of receipt. This inquiry is naturally dependent on the weight and persuasive value, if any, that the Board would assign to Claimant's testimony and is absolutely vital for proper disposition of this case.

For instance, if the Board were to determine that Claimant's testimony, and the corroborating circumstances as the case may be, are convincing enough to override the presumption, the Board should grant *nunc pro tunc* relief so long as the other requirements are met. *See Criss*, 781 A.2d at 1159 (listing requirements for *nunc pro tunc* relief). On the other hand, if the Board were to determine that the evidence of record does not possess such characteristics, then the Board should deny Claimant *nunc pro tunc* relief. In all events, the Board must make this determination as the fact-finder.

"Our scope of review precludes this Court from making factual findings and credibility determinations, and we will not infer credibility determinations from the decision of the fact-finder against the party with the burden of proof." *Miller v. Unemployment Compensation Board of Review*, 131 A.3d 110, 115 n.7 (Pa. Cmwlth. 2015). "Where the Board fails to make necessary findings and credibility determinations, we must remand to the Board. This is especially true where the evidence, if credited, would change the outcome of the case." *Id.* at 115.

Accordingly, we vacate the Board's order and remand for the Board to make the necessary credibility determinations and/or factual findings outlined above.

11

The Board shall then issue a new decision that accounts for its credibility determinations and additional findings of fact.

_____
PATRICIA A. McCULLOUGH, Judge


Senior Judge Pellegrini dissents.

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Maria Torres,                        :
         Petitioner           :
                            :    Nos. 67, 68 & 69 C.D. 2016
        v.                       :
                            :
Unemployment Compensation    :
Board of Review,                :
         Respondent       :

## *ORDER*

AND NOW, this 7th day of November, 2016, the December 8, 2015 order of the Unemployment Compensation Board of Review (Board) is vacated and the case is remanded for the Board to make credibility determinations and/or factual findings as discussed in this memorandum opinion. The Board shall then issue a new decision that accounts for its credibility determinations and additional findings of fact.

Jurisdiction relinquished.

_____
PATRICIA A. McCULLOUGH, Judge